# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELLOUS LEWIS ALLEN,<br><br>  Plaintiff,<br><br>v.<br><br>TOMMY WAN, *et al.*,<br><br>  Defendants. | Case No. 1:17-cv-01621-LJO-EPG (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM**<br><br>(ECF No. 10)<br><br>**OBJECTIONS DUE WITHIN TWENTY-ONE (21) DAYS** |

## I. BACKGROUND

Marcellous Lewis Allen ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his prisoner civil rights complaint on December 5, 2017, (ECF No. 1). The Court issued a screening order, giving leave to amend the complaint or stand on the complaint, subject to Findings and Recommendations to the District Judge. (ECF No. 9). Plaintiff filed an amended complaint on January 16, 2018. (ECF No. 10).

Plaintiff challenges the right of his institution, the California Substance Abuse Treatment Facility and State Prison, Corcoran, to conduct mandatory weekly urinalysis. He also asserts that the testing violated internal procedures.

For the reasons described below, the Court recommends finding that Plaintiff has failed to state a claim. The Court also recommends that the District Judge dismiss the First Amended

Complaint ("FAC") and close the case.

**II.     SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**III.     SUMMARY OF PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff is an inmate at Corcoran State Prison, Substance Abuse Treatment Facility ("SATF"). Plaintiff names seven correctional officers at SATF as defendants.

Plaintiff alleges that he was forced to submit to urine for research purposes under duress on September 29, 2015.[1] On or about September 29, 2015, and since, Plaintiff has been deprived of exercise in 90-day increments and deprived of visits in 180-day increments. Various correctional officers over the last two years have approached his cell once a week to demand that Plaintiff submit to mandatory urine testing. Most noticeable are Defendants Hernandez, Herman, and Acosta.

On or about September 5, 2016, Plaintiff submitted Form 22 to the appropriate officers, but never received a response.

On or about September 7, 2017, Plaintiff submitted a declaration of peaceful hunger strike protest, in order to protect various tortious acts and violations by Correctional Officers A. Hernandez, F. Acosta, and C. Livingston based on their deprivation of outdoor exercise.

---

[1] The Court has attempted to put Plaintiff's allegations in chronological order—not the order they were mentioned in Plaintiff's Amended Complaint.

On or about September 26, 2017, Defendant Acosta gave Plaintiff a direct order to submit a urine sample. Plaintiff complied under duress. Defendant Acosta violated procedures in the D.O.M. [Department Operations Manual, Department of Corrections].

On or about September 19, 2017, Defendant Hernandez came to Plaintiff's cell in an aggressive and threatening manner. That same day, Plaintiff filed a request for interview forms in order to request proof of participation in any program, assignment, or activity that would constitute volunteering to be part of weekly mandatory urinalysis. Plaintiff never received a response.

On or about October 3, 2017, Plaintiff was called from his cell to the captains' office to resolve the hunger strike. Plaintiff was threatened with many forms of retaliation for protesting and the attention it brought. Captain J. Ourique gave Plaintiff intense intimidating and used vulgar language and innuendo/subliminal threatening arm gestures to get Plaintiff to end his protest.

Plaintiff also alleges that he was told (it is unclear on what dates) that he was part of a mandatory urinalysis list. He was informed that a refusal would result in dispositions. Defendant Hernandez violated prison procedure. He failed to be properly trained and certified in the collection and processing of urine and failed to adhere to proper procedures.

Plaintiff alleges that these actions constitute a violation of the Eighth Amendment as cruel and unusual punishment by "subjecting Plaintiff to excessive exorbitant mandatory urinalysis on unfit subject."

**IV.    PRIOR SCREENING ORDER**

Plaintiff's original complaint alleged that on September 19, 2017, Defendant Hernandez came to his cell and ordered him to submit a urine sample. Defendant Hernandez lacked an order from a judge. Plaintiff voiced objections. Plaintiff was eventually cited with a Rules Violation Report, which was fraudulent. (ECF No. 1)

The Court screened Plaintiff's complaint and provided legal standards regarding urinalysis and pleading under Federal Rule of Procedure Rule 8. Regarding urinalysis, the Court advised, "if Plaintiff believes he has a claim, he needs to set forth facts in his amended

3

complaint that would show that prison officials conducted a drug test in order to harass him, and not for the legitimate interest of detecting the use of drugs." (ECF No. 9). It also included legal standards for disciplinary proceedings, including what process is due. *Id.* It gave Plaintiff leave to amend his complaint, or permission to stand on his complaint, subject to findings and recommendations to the District Judge.

## V. EVALUATION OF PLAINTIFF'S AMENDED COMPLAINT

Plaintiff's amended complaint alleges that he was subjected to excessive mandatory urinalysis testing. The amended complaint includes various facts that do not immediately appear relevant to the urinalysis, including punishments given related to various infractions. Based on Plaintiff's statement of his claim, it appears that Plaintiff is challenging the repeated urinalyses given without his consent on a weekly basis.

In upholding a drug test in prison without a court order, the Ninth Circuit has described the law in this area as follows:

> The Supreme Court has declared that compelled urinalysis constitutes a search or seizure within the meaning of the Fourth Amendment. *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 617, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639 (1989) (stating that urinalyses "must be deemed searches under the Fourth Amendment"). As a result, to avoid the proscription of the Fourth Amendment, urinalyses must be conducted in a reasonable manner. *Id.* at 618, 109 S.Ct. at 1413–14. However, prison administrators are accorded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell,* 441 U.S. at 547, 99 S.Ct. at 1878.
>
> As stated earlier in this opinion, the Supreme Court has not decided whether prison inmates retain cognizable rights of privacy under the Fourth Amendment. Assuming *arguendo* that they do possess such rights, we analyze the reasonableness of the instant drug test to determine if the drug test was reasonably related to legitimate penological interests. Reasonableness in the context of prison administration requires "[b]alancing the significant and legitimate security interests of the institution against the privacy interests of the inmates." *Id.* at 560, 99 S.Ct. at 1885. At least two circuits have adopted the *Bell* balancing test in response to prison inmates' challenges to random urinalysis and have concluded that, upon a determination that the procedures for selecting the inmates to be tested are "truly random," such testing is not unreasonable. *See, e.g., Spence v. Farrier,* 807 F.2d 753, 755 (8th Cir.1986); *Forbes v. Trigg,* 976 F.2d 308, 315 (7th Cir.1992); *see also Storms v. Coughlin,* 600 F.Supp. 1214,

4

1223 (S.D.N.Y.1984) (procedure for selecting inmates for testing not "truly random" and thus unreasonable where prison official selected cards representing inmates off a bulletin board). The requirement of random tests stems from a concern that correctional officials could harass particular inmates by subjecting them to repeated drug tests. *See Forbes,* 976 F.2d at 315.

Applying the balancing factors discussed in *Bell,* in light of the test articulated in *Turner,* we conclude that Thompson's urinalysis was reasonably related to legitimate penological interests.

*Thompson v. Souza*, 111 F.3d 694, 701–702 (9th Cir. 1997).

Plaintiff alleges he was subjected to weekly urinalysis under duress. Plaintiff is confined at an institution focusing on substance abuse treatment: the California Substance Abuse Treatment Facility and State Prison. He alleges that the tests were done as part of a "mandatory urinalysis list." The tests were administered by multiple guards over many years.

Given these allegations, the Court finds that Plaintiff has failed to state a constitutional claim. As described above, prison officials are entitled to require urinalysis for legitimate penological interests. Plaintiff's allegations do not establish that they were done to harass Plaintiff or for another non-penological reason. Instead, it appears that the Substance Abuse Treatment Facility has a program of mandatory urinalysis tests that are administered by many officers in a programmed manner. Forced testing under this situation is constitutional.

Plaintiff also asserts that Defendants violated internal policies and procedures for such testing. But a violation of the prison manual does not by itself state a constitutional, or federal, claim.

**VI.  CONCLUSION AND RECOMMENDATIONS**

The Court has screened the First Amended Complaint, and finds that it fails to state a claim under the relevant legal standards.

The Court will not recommend granting further leave to amend. The Court previously screened Plaintiff's original complaint and provided Plaintiff with leave to amend with the benefit of ample legal guidance.

Based on the foregoing, it is **HEREBY RECOMMENDED** that:

1. This case be DISMISSED for failure to state a claim;

2. The Clerk of the Court be directed to CLOSE this case; and

3. The dismissal be subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g). *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763 (2015).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **March 22, 2018**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE